IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **LUIS MANUEL TIRADO-MALDONADO, DAMILKA PARRA TORIBIO and THE CONJUGAL PARTNERSHIP COMPOSED BY THEM**<br><br>**Plaintiffs**<br><br>**Vs.**<br><br>**JETBLUE AIRWAYS CORPORATION; CORPORATIONS A, B and C; INSURANCE COMPANIES X, Y and Z; JOHN DOE; JANE ROE**<br><br>**Defendants** | **CIVIL NO. 2020-cv-1213**<br><br>**RE: TORTS**<br><br>**PLAINTIFFS REQUEST TRIAL BY JURY** |

**COMPLAINT**

**TO THE HONORABLE COURT:**

Comes now the plaintiff, through the undersigned attorney, and, very respectfully, states, alleged and pray:

**I. JURISDICTION AND VENUE**

1. This is a civil action arising under The Convention for the Unification of Certain Rules for International Carriage by Air ("**Montreal Convention**"), which entered into the force in the United States of America on November 4, 2003. See 28 May 1999, ICAO Doc. 9740, reprinted in S. Treaty Doc. No. 106-45, 1999 WL 3392734. At all times hereinafter mentioned, the United States of America and the Dominican Republic were High Contracting Parties to the Montreal Convention.

2. JetBlue Airways Corporation ("**JetBlue**") is a signatory of the convention.

3. The Montreal Convention covers all international carriage of persons performed by an aircraft for reward. According to article 1 of the Montreal Convention, an international carriage is any flight between two countries that have ratified the convention or a domestic flight that also stops at a point in another foreign country. In addition, according to article 17 of the treaty, a carrier is liable for damages sustained in the event of any bodily injury of a passenger when the accident that caused the damage occurred on board of the aircraft or in the course of any of the operations of embarking or disembarking the aircraft.

4. The accident subject of this Complaint took place in a jet bridge of Las Américas International Airport while Mr. Luis Manuel Tirado-Maldonado was disembarking a JetBlue aircraft following a flight from San Juan, Puerto Rico, to Santo Domingo, Dominican Republic. Therefore, jurisdiction in this case is based on the Montreal Convention and 28 U.S.C. § 1331.

5. Article 33 of the convention provides that the injured person can bring a lawsuit in his or her permanent place of residence if said place is one in which the carrier operates and in which the carrier conducts its business of carriage of persons from premises leased or owned by it.

6. At the date of the subject accident and today, Mr. Tirado-Maldonado's permanent residence is San Juan, Puerto Rico. Further, at the date of the accident and today, JetBlue operates air services to and from Puerto Rico and, upon information and belief, leases a premise at Luis Muñoz Marín International Airport in Carolina, Puerto Rico. Hence, pursuant to Article 33 of the Montreal Convention, the venue lies in this district.

## II. THE PARTIES

7. Plaintiffs, Mr. Tirado-Maldonado and Dawilka Parra Toribio, are of legal age, married and permanent residents of San Juan, Puerto Rico.

8. JetBlue is a corporation organized and existing pursuant to the laws of the State of Delaware with its principal place of business in the State of New York. In addition, at all times hereinafter mentioned, JetBlue was a domestic common carrier authorized to conduct and engage in air transportation as the holder of certificates issued by the Federal Aviation Administration of the United States of America pursuant to Part 121 of the Federal Aviation Regulations as an Air Carrier in Air Commerce and in the course of which business activity it owned, operated, controlled and maintained several types of aircrafts.

9. Corporations A, B and C are legal persons that provided services for JetBlue related to disembarking of passengers from JetBlue flights, whose name is currently unknown, and that are liable for the damages caused to the Plaintiffs.

10. John Doe and Jane Roe are natural persons are legal persons that provided services for JetBlue related to disembarking of passengers from JetBlue flights, whose name is currently unknown, and that are liable for the damages caused to the Plaintiffs.

11. Insurance Companies X, Y and Z are the fictitious names of the insurance companies that, at the time of the facts stated herein, issued and maintained in full force and effect insurance policies for JetBlue, which provides defense and coverage for the facts alleged herein.

### III. THE FACTS AND DAMAGES

12. Mr. Tirado-Maldonado is a person with disability due to paraplegia that requires a wheelchair to move around.

13. On May 7, 2019, JetBlue operated an aircraft as flight number 1937 from Luis Muñoz Marín International Airport in Carolina, Puerto Rico, to Las Américas International Airport in Santo Domingo, Dominican Republic.

14. On or around April 22, 2019, Mr. Tirado-Maldonado, whose JetBlue's TrueBlue number is 3842276704, purchased a plane ticket for air transportation from JetBlue to travel from San Juan, Puerto Rico, to Santo Domingo, Dominican Republic, and JetBlue accepted Mr. Tirado-Maldonado as fare paying passenger on board of said flight number 1937.

15. Mr. Tirado-Maldonado traveled as scheduled on May 7, 2019, arriving to Santo Domingo, Dominican Republic, at around 2:45 p.m.

16. After landing, Mr. Tirado-Maldonado had to wait for more than thirty (30) minutes for his wheelchair.

17. Eventually, once all passengers and crew had left the aircraft and when the maintenance crew was already working in the cabin, an employee, agent or servant acting for and on behalf of JetBlue arrived to the cabin with a Transport Wheelchair, which was not Mr. Tirado-Maldonado's wheelchair, to take Mr. Tirado-Maldonado to the airport's baggage claim area.

18. The JetBlue's employee, agent or servant did not strap Mr. Tirado-Maldonado's legs to the Transport Wheelchair's footrest in spite Mr. Tirado Maldonado had told him that he was paraplegic and had no control over his legs.

19. Once outside the airplane and while at the platform of the jet bridge that connects the airplane to the airport's gate, the JetBlue's employee, agent or servant did not strap Mr. Tirado-Maldonado's legs to the footrests but kept pushing the JetBlue's wheelchair very rapid and brusquely towards the gate.

20. During the travel to the terminal, the Transport Wheelchair "jumped" when its wheels passed by the first connector of the jet bridge causing Mr. Tirado-Maldonado's left leg to fall from the footrest.

21. Mr. Tirado-Maldonado requested the JetBlue's employee, agent or servant to stop the wheelchair since his left leg had fallen from the footrest and his foot was under the wheelchair.

22. The JetBlue's employee, agent or servant ignores Mr. Tirado-Maldonado and kept pushing the wheelchair.

23. At some point and still in the jet bridge, Mr. Tirado-Maldonado heard a popping noise followed by immediate pain and pressure sensation in his left leg.

24. In spite Mr. Tirado-Maldonado was begging and shouting him to stop, the JetBlue's employee, agent or servant kept pushing the wheelchair dragging Mr. Tirado-Maldonado's left foot and did not stop until he reached the airport's gate around thirty seconds later.

25. Rather than calling for emergency medical aid, to Mr. Tirado Maldonado's surprise, the JetBlue's employee, agent or servant put the left leg back in the footrest and kept the travel to the baggage claim area.

26. At the baggage claim area, the JetBlue's employee, agent or servant changed Mr. Tirado-Maldonado to his wheelchair and took his baggage outside the building where Mrs. Parra Toribio was waiting to pick up Mr. Tirado Maldonado.

27. Mr. Tirado-Maldonado was scared and petrified seeing his leg deformed and completely swollen.

28. In spite the evident physical injuries that Mr. Tirado-Maldonado had suffered, the JetBlue's employee, agent or servant abandoned Mr. Tirado-Maldonado without offering or looking for any paramedical or medical aid.

29. Plaintiffs decided to make the car travel to Santiago where they arrived about three hours later at nighttime.

30. Mr. Tirado-Maldonado was emotionally distress and worried that the dragging of his left feet under the wheelchair for several minutes could have caused permanent damage and deformity to said extremity. Because of that, on May 9, 2019, Mr. Tirado Maldonado went to *Centro de Especialidades Dr. Estrella, S.R.L.*, in Santiago,

Dominican Republic where a physician diagnosed left tibial and fibular factures, placed his leg on a hard cast and recommended surgery. Mr. Tirado-Maldonado rejected the surgery recommendation since he had no insurance to cover for the surgery in the Dominican Republic. However, Mr. Tirado-Maldonado agreed to visit the physician for daily check-up and treatment of the injuries until his return to Puerto Rico on May 11, 2019.

31. On May 9, 2019, Mr. Tirado-Maldonado also e-mailed JetBlue's customer service center to inform what had happened but JetBlue failed to promptly answer his claims.

32. In Puerto Rico, Mr. Tirado-Maldonado visited orthopedic surgeon Dr. Ramón Collazo, who confirmed the fractures, placed the leg on a fiberglass splint and, after three weeks of treatment, recommended amputation of the leg to avoid the long treatment and uncertainty of the recovery of the fractures.

33. On May 13, 2019, JetBlue recognized by e-mail sent to Mr. Tirado Maldonado that their "service failed to meet the standards set by the Department of Transportation and [JetBlue's] own high standards of customer service" but, again, failed to address Mr. Tirado-Maldonado's concern at the time, which was his health.

34. The fiberglass splint placed by Dr. Collazo caused an ulcer in Mr. Tirado-Maldonado's foot for which sought medical care and treatment from Dr. Leonardo Valentín at Professional Hospital in Guaynabo.

35. In addition to treat the ulcer, Dr. Valentín referred Mr. Tirado-Maldonado to Dr. José Suárez Castro, orthopedic surgeon, to look for a second opinion in relation to the treatment of the fractures of the left leg.

36. Mr. Tirado-Maldonado visited Dr. José E. Suárez Castro, who recommended conservative treatment in an attempt to save Mr. Tirado-Maldonado's left lower extremity.

37. Dr. Suárez Castro placed Mr. Tirado-Maldonado's leg on a hard cast for around ten months until the fractures finally healed.

38. Because of the hard cast, Mr. Tirado Maldonado developed several ulcers in the left foot and ankle that required extensive treatment with Dr. Valentín and that increased the risk of amputation.

39. Mr. Tirado-Maldonado had to be submitted to several x-rays and imaging studies to follow the progress of the healing of the fractures. It was not until February 25, 2020, that the fractures finally healed and, on or around that date, the physicians told Mr. Tirado-Maldonado that the amputation could be ruled out.

40. Although paraplegic, Mr. Tirado-Maldonado has some sensation in his legs. Therefore, Mr. Tirado-Maldonado felt some pain and abnormal sensations in his left leg though this ordeal that has not concluded yet since the leg is still swollen and he still needs to use a semi-cast and/or brace to ensure ankle protection and stability.

41. During the long ten months that the medical care and treatment lasted, Mr. Tirado-Maldonado lived in permanent fear of losing his left leg due to the fractures and ulcers caused by the JetBlue's employee, agent or servant's negligent operation of the Transport Wheelchair.

42. The fractures and the ulcers related to the fractured together to the fear to lose the left leg caused Mr. Tirado-Maldonado to be exhausted and unable to carry out the duties related to his cigar manufacturing business named *LMT Obsess Cigars*. He also had problems to sleep. In addition, although he is a person with disability, Mr. Tirado Maldonado learned to be an independent person. However, these injuries made him very dependent of his mother and wife, which brought him feelings of worthlessness and crying spells. In sum, throughout this ordeal, Mr. Tirado-Maldonado has been depressed, anxious, sad and irritable.

43. Because of the injuries caused by the JetBlue's employee, agent or servants to her husband, Mrs. Parra Toribio also suffered significantly as she saw Mr. Tirado-Maldonado sad, moody and worried about his future. She felt hopeless and had negative thoughts about the prognosis of Mr. Tirado-Maldonado's leg. Because of that, Mrs. Para Toribio also presented crying spells, mood changes and problems to sleep throughout this ordeal.

## IV. LIABILITY

44. Because Mr. Tirado-Maldonado was in the process of disembarking, pursuant to article 17 of the Montreal Convention, JetBlue is strictly liable for the injuries and damages sustained by the Plaintiffs due to the JetBlue's employee, agent or servant's operation of the wheelchair in said process of disembarking up to the sum of 113,000

6

Special Drawing Rights (around $152,000 as of March 23, 2020), without excluding or limiting its liability. However, since the damages suffered by the plaintiffs are not fully compensated by said amount, over it, JetBlue may only limits its liability by proving that the damages suffered by the Plaintiffs were not caused by negligence or wrongful conduct of their employee, agent or servant, or that the damages were likely caused by the negligence of a third party.

45. The person that did not strap Mr. Tirado-Maldonado's leg to the footrests and that pushed the wheelchair recklessly in the jet bridge was an employee or someone retained by JetBlue to do said job for it and/or someone that JetBlue authorized to enter the aircraft to take Mr. Tirado-Maldonado to the gate and/or someone that was acting for and on behalf of JetBlue when he transported Mr. Tirado-Maldonado from the plane cabin to the airport's terminal and/or JetBlue's partner as recognized by JetBlue via e-mail dated May 13, 2019; that is, said person was either an employee, agent or servant of JetBlue. Furthermore, not strapping the legs to the footrests, pushing the wheelchair very hard through an uneven surface such as a jet bridge, and failing to recognize that he was dragging the foot of the passenger in spite the latter's cries to stop are all negligent acts or omissions that failed to meet JetBlue's quality standards as also recognized by said co-defendant in the e-mail notified to Mr. Tirado-Maldonado on May 13, 2019. Therefore, JetBlue cannot limit its straight liability to 113,000 Special Drawing Rights but has to fully compensate all the damages suffered by the Plaintiffs.

46. The physical injuries and pain endured by Mr. Tirado-Maldonado caused by the fault and negligence of JetBlue are valued in a sum of not less than ONE MILLION FIVE HUNDRED THOUSAND DOLLARS ($1,500,000.00), for which JetBlue and Insurance Companies X, Y and Z are jointly and severally liable to the Plaintiffs.

47. The suffering, mental anguish and distress, and emotional damages suffered by Mr. Tirado-Maldonado as a result of the physical injuries caused by the fault and negligence of JetBlue are valued in a sum of not less than FIVE HUNDRED THOUSAND DOLLARS ($500,000.00), for which JetBlue and Insurance Companies X, Y and Z are jointly and severally liable to the Plaintiffs.

48. The mental anguish, suffering and emotional distress endured by Mrs. Parra Toribio as a result of the physical injuries that the fault and negligence of JetBlue caused

to her husband are valued in a sum of not less than TWO HUNDRED THOUSAND DOLLARS ($200,000.00), for which JetBlue and Insurance Companies X, Y and Z are jointly and severally liable to the Plaintiffs.

49. Consequently of the injuries sustained by Mr. Tirado-Maldonado because of the fault and negligence of JetBlue, Plaintiffs had to incur and will continue to incur in the future in medical expenses in excess of ONE THOUSAND DOLLARS ($1.000.00), for which JetBlue and Insurance Companies X, Y and Z are jointly and severally liable to the Plaintiffs.

50. Insurance Companies X, Y and Z are directly liable to the Plaintiffs for the injuries and damages that they sustained because of the fault and negligence of its insureds, JetBlue and the unknow defendants, according to articles 20.010 and 20.030 of the Insurance Code of Puerto Rico, 26 L.P.RA. §§ 2001 and 2003.

## V. JURY TRIAL

51. Plaintiffs demand trial by jury,

WHEREFORE, Plaintiffs request very respectfully that this Honorable Court enter judgment in a sum not less than the above claimed amounts, plus costs, pre-judgment and post-judgment interests and attorneys' fees.

RESPECFULY SUBMITTED.

In San Juan, Puerto Rico, this 5th day of May 2020.

*s/Raphael Peña Ramón*
Raphael Peña Ramón
USDC-PR-212201
**PEÑA RAMÓN & CO. LAW FIRM**
Cupey Professional Mall
359 San Claudio Ave.,
 Suite 312
San Juan, PR 00926
Tel. (787) 977-9595
Fax. (787) 977-9494
rgpena@penaramonlaw.com